**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| PRECIS GROUP LLC, <br><br> Plaintiff, <br><br> v. <br><br> TRACFONE WIRELESS, INC., <br><br> Defendant. | Case No. 6:20-cv-0303 <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Precis Group LLC ("Precis" or "Plaintiff") hereby asserts the following claims for patent infringement against Defendant Tracfone Wireless, Inc., ("Tracfone" or "Defendant"), and alleges as follows:

**SUMMARY**

1.     Precis owns United States Patent Nos. 9,813,564, 10,057,432, 10,218,859, and 10,594,873 (the "Patents-in-Suit").

2.     Tracfone infringes the Patents-in-Suit by implementing, without authorization, Precis' proprietary technologies in its provisioning of prepaid mobile services.

3.     By this action, Precis seeks to obtain compensation for the harm Precis has suffered as a result of Tracfone's infringement of the Patents-in-Suit.

**NATURE OF THE ACTION**

4.     This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

5.     Tracfone has infringed and continues to infringe, and at least as early as the filing

and/or service of this Complaint, has induced and continues to induce infringement of, and has contributed to and continues to contribute to infringement of, at least one or more claims of each of the Patents-in-Suit at least by making, using, selling, and/or offering to sell its products and services in the United States, including in this District.

6. Precis is the legal owner by assignment of the Patents-in-Suit, which were duly and legally issued by the United States Patent and Trademark Office ("USPTO"). Precis seeks monetary damages for Tracfone's infringement of the Patents-in-Suit.

## THE PARTIES

7. Plaintiff Precis Group LLC is a Delaware limited liability company. Precis is the owner of intellectual property rights at issue in this action.

8. On information and belief, Defendant Tracfone Wireless, Inc., is Delaware corporation, with a principal place of business at 9700 NW 112th Avenue, Miami, FL 33178. Tracfone may be served through its registered agent, Corporate Creations Network, Inc., at 3411 Silverside Rd Tatnall Building Ste. 104, Wilmington, DE 19810.

9. On information and belief, Tracfone directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell and/or sells infringing products and services in the United States, including in the Western District of Texas, and otherwise directs infringing activities to this District in connection with its products and services.

## JURISDICTION AND VENUE

10. As this is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, this Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

11. This Court has personal jurisdiction over Tracfone, in part because Tracfone does

continuous and systematic business in this District, including by providing infringing products and services to the residents of the Western District of Texas that Tracfone knew would be used within this District, and by soliciting business from the residents of the Western District of Texas.  For example, Tracfone is subject to personal jurisdiction in this Court because, inter alia, and on information and belief, Tracfone has a regular and established place of business at its offices in the Western District of Texas, including at 1825 SW Military Dr., San Antonio, TX 78221 (and elsewhere in the State of Texas), and directly and through agents regularly does, solicits, and transacts business in the Western District of Texas (and elsewhere in the State of Texas), including, for example, through its www.tracfone.com website.

12.     In particular, Tracfone has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271, and has made, used, marketed, distributed, offered for sale, sold, and/or imported infringing products in the State of Texas, including in this District, and engaged in infringing conduct within and directed at or from this District.  For example, Tracfone has purposefully and voluntarily placed the Accused Products into the stream of commerce with the expectation that the Accused Products will be used in this District.  The Accused Products have been and continue to be distributed to and used in this District.  Tracfone's acts cause and have caused injury to Precis, including within this District.

13.     Venue is proper in this District pursuant to § 1400(b) because Defendant has a regular and established place of business at its offices in the Western District of Texas, including at 1825 SW Military Dr., San Antonio, TX 78221, and certain of the acts complained of herein occurred in this judicial district.

### THE PATENTS-IN-SUIT

14.     U.S. Patent No. 9,813,564 (the "'564 Patent") is titled "Secured Pre-Payment for

Portable Communication Unit," and was issued on November 7, 2017.  A true and correct copy of the '564 Patent is attached as Exhibit A.

15.     The '564 Patent was filed on December 23, 2016 as U.S. Patent Application No. 15/390,325 and is a continuation of an application filed on April 27, 2000.

16.     Precis is the owner of all rights, title, and interest in and to the '564 Patent, with the full and exclusive right to bring suit to enforce the '564 Patent, including the right to recover for past infringement.

17.      The '564 Patent is valid and enforceable under United States Patent Laws.

18.     U.S. Patent No. 10,057,432 (the "'432 Patent") is titled "Secured Pre-Payment for Portable Communication Unit," and was issued on August 21, 2018.  A true and correct copy of the '432 Patent is attached as Exhibit B.

19.     The '432 Patent was filed on November 6, 2017 as U.S. Patent Application No. 15/805,081 and is a continuation of the '564 Patent which is a further continuation of an application filed on April 27, 2000.

20.     Precis is the owner of all rights, title, and interest in and to the '432 Patent, with the full and exclusive right to bring suit to enforce the '432 Patent, including the right to recover for past infringement.

21.      The '432 Patent is valid and enforceable under United States Patent Laws.

22.     U.S. Patent No. 10,218,859 (the "'859 Patent") is titled "Secured Pre-Payment for Portable Communication Unit," and issued on February 26, 2019.  A true and correct copy of the '859 Patent is attached as Exhibit C.

23.     The '859 Patent was filed on August 17, 2018 as U.S. Patent Application No. 15/999,139 and is a continuation of the '432 Patent which is a further continuation of the '564

4

Patent which is a further continuation of an application filed on April 27, 2000.

24.     Precis is the owner of all rights, title, and interest in and to the '859 Patent, with the full and exclusive right to bring suit to enforce the '859 Patent, including the right to recover for past infringement.

25.     The '859 Patent is valid and enforceable under United States Patent Laws.

26.     U.S. Patent No. 10,594,873 (the "'873 Patent") is titled "Secured Pre-Payment for Portable Communication Unit," and issued on March 17, 2020.  A true and correct copy of the '873 Patent is attached as Exhibit D.

27.     The '873 Patent was filed on February 26, 2019 as U.S. Patent Application No. 16/285,827 and is a continuation of the '859 Patent which is a further continuation of the '432 Patent which is a further continuation of the '564 Patent which is a further continuation of an application filed on April 27, 2000.

28.     Precis is the owner of all rights, title, and interest in and to the '873 Patent, with the full and exclusive right to bring suit to enforce the '873 Patent, including the right to recover for past infringement.

29.     The '873 Patent is valid and enforceable under United States Patent Laws.

30.     The Patents-in-Suit recognized several problems with existing access to cellular service as a typical cellular service provider which require users to have a good credit history in order to obtain services.  Exhibit A at 1:30-40.  The Patents-in-Suit recognized that it was also easy for users of cellular phones to use the phones for service beyond the credit capacity of their owners.  Exhibit A at 1:35-37.

31.     In addition, the Patents-in-Suit recognized that this problem excluded a large segment of the population from cellular services as the existing cellular service providers were

unwilling to assume the risk of a loss, due to theft or overuse.  Exhibit A at 1:41-44.

32.     To address one or more shortcomings of existing access to cellular service through a traditional service provider, the Patents-in-Suit discloses methods to satisfy the long-felt need of the prior art for a third party (other than the traditional cellular service providers) to "allow[] users with insufficient or poor credit history to purchase service."  Exhibit A at 1:48-52.  Furthermore, the solution disclosed by the Patents-in-Suit provide additional advantages by "provid[ing] a system where individuals and entities can maintain tighter cost controls by limiting users to a fixed allocation of service time."  Exhibit A at 1:52-55.  Furthermore, the solution disclosed by the Patents-in-Suit created a solution for third party cellular providers to eliminate problems with accounts receivable by "receiv[ing] payment in advance of the actual provisions of services to receive the time-value benefit of the payments."  Exhibit A at 1:56-62

33.     Indeed, the inventions of the Patents-in-Suit overcame the limitations of prior systems, by providing a unique portable communication system "configured to provide portable communication services in discrete predetermined blocks of service time."  Exhibit A at 1:66-2:3.

**The Inventions Claimed in the Patents-in-Suit Improved Technology for Increased Access to Cellular Service and Were Not Well-Understood, Routine, or Conventional**

34.     Given the state of the art at the time of the inventions of the Patents-in-Suit, including the inability of those without good credit history to access cellular service and the inability of users to prepay for services to be used on multiple providers, the inventive concepts of the Patents-in-Suit cannot be considered to be conventional, well-understood, or routine.  *See, e.g.*, Exhibit A at 1:22-2:25.  Indeed, there was a long-felt need in the art at the time of the inventions of the Patents-in-Suit that the claimed inventions of the Patents-in-Suit addressed.  *See, e.g., id* at 1:48-2:25.  In this respect, the Patents-in-Suit disclose, among other things, an unconventional solution to problems arising in the context of providing cellular service, namely that third party

service providers that do not operate cellular networks are able to contract with the then existing cellular service network operators (*e.g.*, Verizon, Sprint fka Nextel, AT&T fka Cingular Wireless, T-Mobile fka Voicestream) to obtain access for users who desired to purchase predetermined blocks of time for use with their respective communication devices. *See, e.g.*, *id*. at 1:63-2:14)

35.     The inventions of the Patents-in-Suit offered an unconventional, technological solution to such problems resulting in a "unique portable communication system which comprises, in conjunction, a unique portable communication unit that may be easily configured to provide communication services in discrete predetermined blocks of service time, along with a secure system of prepayment for use of the communication unit and service time. *Id.* at 1:63-2:3.

36.     Indeed, it was not well-understood, routine, or conventional at the time of the inventions of the Patents-in-Suit to perform the following functions for a method of prepayment for service on a telecommunications system using a portable communication unit (PCU), alone and/or in combination with one another: (i) receiving a prepayment from a customer at a dealer for service on a telecommunications system using a first telecommunication channel, (ii) receiving transaction order information at a prepaid management center (PMC) from a dealer about the prepayment by the customer to the dealer, the PMC receiving the transaction order information using a second telecommunication channel, (iii) providing a bank the transaction order information using a third telecommunication channel and the PMC, (iv) notifying the dealer using the third telecommunication channel if insufficient funds are determined to be in a dealer account at the bank and providing the dealer an opportunity to replenish the dealer account, (v) if sufficient funds are determined to be in the dealer account, automatically transferring the amount of the transaction from the dealer account to a secure payment system (SPS) account using a fourth telecommunication channel, less a dealer's fee for the transaction; after funds have been transferred

from the dealer account to the SPS account, notifying the PMC of the transfer using a fifth telecommunication channel in response to the funds transfer into the SPS account; in response to the funds transfer into the SPS account, generating codes using the PMC to enable the PCU to provide the service on the telecommunication system, (vi) transferring the codes to the customer using the first telecommunication channel for entry into the PCU by the customer, (vii) processing the codes using the PCU, and (viii) providing the service on the telecommunication system using the result of processing the codes by the PCU.  Exhibit B at Claims 1

37.     Further, it was not well-understood, routine, or conventional at the time of the inventions of the Patents-in-Suit to perform one or more of the following functions alone and/or in combination with one or more of the unconventional functions set forth above: issuing the codes to the dealer using the PMC and a sixth telecommunication channel.  *See, e.g.*, Exhibit B at Claims 2.

38.     These are just exemplary reasons why the inventions claimed in the Patents-in-Suit were not well-understood, routine, or conventional at the time of the invention of the Patents-in-Suit.

39.     Consistent with the problems addressed by the Patents-in-Suit being rooted in the specific problem surround providing access to a traditional cellular service provider which operates a cellular network, at least because the Patents-in-Suit's claimed inventions address problems rooted in providing access to a cellular service provider's network, these inventions are not merely drawn to longstanding human activities.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,813,564

40.     Precis incorporates by reference and re-alleges paragraphs 14-39 of this Complaint as if fully set forth herein.

41.    Defendant Tracfone has infringed and is infringing, either literally or under the doctrine of equivalents, the '564 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, or selling in the United States through contracts with its own retail stores (*e.g.*, Total Wireless branded stores) and/or partner stores, which operate under the direction and control of Tracfone, prepaid cellular Airtime phone cards ("Accused Products") .

As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 1 of the '564 Patent in connection with the Accused Products.  This description is based on publicly available information.  Precis reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery. *1(a): A method of prepayment for service on a telecommunications system using a portable communication unit (PCU), the method comprising*: Tracfone is a Mobile Virtual Network Operator ("MVNO") which does not operate an cellular network but contracts with its own retail stores, partner stores, cellular service providers which own cellular networks, and financial institution to make, use, sell, and/or offer to sell a device or system that practices the method of prepayment for service on a telecommunications system using a portable communication unit in accordance with Claim 1.  For instance, Tracfone is an MVNO that operates by allowing users to add airtime as you need it at 70,000 retail locations nationwide.  *See* ww2.tracfone.com/pay_as_you_go.jsp

*1(b): a customer prepaying a dealer for service on a telecommunications system*; To use Tracfone's system, Tracfone users prepay a dealer for a Tracfone airtime card; For instance, a Tracfone user prepays a Total Wireless Retail store or a Tracfone contracted partner retail store for Tracfone airtime card;

*1(c): the dealer forwarding transaction order information about the pre-payment to a prepaid management center (PMC);* For instance, Tracfone is an MVNO.  Upon information and belief, Tracfone controls or directs its retail store or an authorized retailer through contractual agreements,  such that the retail store or an authorized retailer forwards information related to a purchased Tracfone airtime card to a Tracfone's prepaid management.  *See e.g.*, http://twexclusive.com/pdf/Retail%20Dealer%20Presentation.pdf

*1(d): the PMC providing a bank the transaction order information;* For instance, Tracfone is an MVNO and provides a financial institution associated and contracted with its contracted retail store or authorized retailer order information (individually or in sweeps) related to a purchase of an airtime card.

*1(e): upon receipt of the transaction order information from the PMC, the bank determining whether there are sufficient funds in a dealer account to cover an amount of the transaction;* For instance, Tracfone is an MVNO.  Upon information and belief, a financial institution associated and contracted with the retail store or authorized retailer perform sweeps to determine if sufficient funds are in the account to cover the prepayment of the airtime.

*1(f): if insufficient funds are in the dealer account, the bank notifying the dealer and providing the dealer an opportunity to replenish the account so the transaction may proceed;* For instance, Tracfone is an MVNO.  Upon information and belief, a financial institution associated and contracted with the retail store or authorized retailer notifies the retail store or authorized retailer to replenish the account if insufficient funds are in the account.

*1(g): if sufficient funds are in the dealer account, the bank automatically transferring the amount of the transaction from the dealer account to a secure payment system (SPS) account, less a dealer's fee for the transaction;* For instance, Tracfone is an MVNO.  Upon

information and belief, a financial institution associated and contracted with the retail store or authorized retailer contracted with Tracfone automatically transferring the amount of the transaction from the dealer account to a secure payment system (SPS) account under the direction or control of Tracfone.  Upon information and belief, Tracfone maintains an account payable to each of the various cellular network operators it contracts with.

*1(h): after funds have been transferred from the dealer account to the SPS account, notifying the PMC of the transfer;* For instance, Tracfone is an MVNO.  Upon information and belief, the SPS account under the direction or control of Tracfone, notifies Tracfone after funds have been transferred.

*1(i): after notification, the PMC generating codes required to enable the PCU to provide the service on the telecommunication system and issuing the codes to the dealer;* For instance, Tracfone is an MVNO.  Upon information and belief, after Tracfone is notified of funds received related to a purchase of an airtime card; Tracfone generates codes that enable that relate to an airtime card which enables the PCU to provide service.

*1(j): the dealer transferring the codes to the customer;*  The retail store or authorized retailer under the direction or control of Tracfone via a contractual agreement transfers the codes to the customer.

*1(k): the customer entering the codes into the PCU, enabling the PCU to provide the service on the telecommunication system.*  For instance, the codes are used by the customer to enable Tracfone to provide service on the cellular network.

42.     Additionally, Defendant Tracfone has been and/or currently is an active inducer of infringement of the '564 Patent under 35 U.S.C. § 271(b) and contributory infringer of the '564 Patent under 35 U.S.C. § 271(c).

43.     Tracfone knew of the '564 Patent, or at least should have known of the '564 Patent since at least as early as August 23, 2018, but was willfully blind to its existence. Tracfone has had actual knowledge of the '564 Patent since at least as early as August 23, 2018 when claim charts for the '564 Patent were provided to Tracfone.

44.     Tracfone has provided the Accused Products to its customers and, on information and belief, instructions to use the Accused Products in an infringing manner while being on notice of (or willfully blind to) the '564 Patent and Tracfone's infringement.  Therefore, on information and belief, Tracfone knew or should have known of the '564 Patent and of its own infringing acts, or deliberately took steps to avoid learning of those facts.

45.     Tracfone knowingly and intentionally directs or controls are parties to directly infringe the '564 Patent.

46.     At least as early as at least as early as August 23, 2018, Tracfone's infringement of the '564 Patent was and continues to be willful and deliberate, entitling Precis to enhanced damages.

47.     Additional allegations regarding Tracfone's knowledge of the '564 Patent and willful infringement will likely have additional evidentiary support after a reasonable opportunity for discovery.

48.     Tracfone's infringement of the '564 Patent is exceptional and entitles Precis to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

49.     Precis is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '564 Patent.

50.     Precis is entitled to recover from Tracfone all damages that Precis has sustained as a result of Tracfone's infringement of the '564 Patent, including, without limitation, a reasonable

royalty.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,057,432

51.    Precis incorporates by reference and re-alleges paragraphs 14-39 of this Complaint as if fully set forth herein.

52.    Defendant Tracfone has infringed and is infringing, either literally or under the doctrine of equivalents, the '432 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, or selling in the United States through contracts with its own retail stores (e.g. Total Wireless branded stores) and/or partner stores, which operate the sales under the direction and control of Tracfone, prepaid cellular Airtime phone cards ("Accused Products").

As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 1 of the '432 Patent in connection with the Accused Products.  This description is based on publicly available information.  Precis reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.

*1(a): A method of prepayment for service on a telecommunications system using a portable communication unit (PCU), the method comprising*: Tracfone is a Mobile Virtual Network Operator ("MVNO") which does not operate an cellular networks but directs or controls its own retail stores, partner stores, cellular service providers which own cellular networks, and financial institution to make, use, sell, and/or offer to sell a device or system that practices the method of prepayment for service on a telecommunications system using a portable communication unit in accordance with Claim 1.  For instance, Tracfone is an MVNO that operates by allowing users to add airtime as you need it at 70,000 retail locations nationwide.  *See*

ww2.tracfone.com/pay_as_you_go.jsp

*1(b): receiving a prepayment from a customer at a dealer for service on a telecommunications system using a first telecommunication channel;* To use Tracfone's system, Retail stores or an authorized retailer under the direction or control of Tracfone receive a prepayment from a customer for a Tracfone airtime card using a first telecommunication channel;

*1(c): receiving transaction order information at a prepaid management center (PMC) from a dealer about the prepayment by the customer to the dealer, the PMC receiving the transaction order information using a second telecommunication channel;* For instance, Tracfone is an MVNO.  Upon information and belief, Tracfone directs or controls its retail store or an authorized retailer via contractual agreements such that Tracfone receives transaction information from the retail store or an authorized retailer related to a prepayment to the retail store or an authorized retailer using a second telecommunication channel.  *See e.g.*, http://twexclusive.com/pdf/Retail%20Dealer%20Presentation.pdf

*1(d): providing a bank the transaction order information using a third telecommunication channel and the PMC;* For instance, Tracfone is an MVNO.  Upon information and belief, Tracfone directs or controls its retail store or an authorized retailer via contractual agreements to provide the transaction order information related to a purchase of an airtime card.  *1(e): notifying the dealer using the third telecommunication channel if insufficient funds are determined to be in a dealer account at the bank and providing the dealer an opportunity to replenish the dealer account;* Upon information and belief, a financial institution associated and contracted with the retail store or authorized retailer notifies the retail store or authorized retailer if insufficient funds are determined and provides an opportunity to replenish the account.

*1(f): if sufficient funds are determined to be in the dealer account, automatically transferring the amount of the transaction from the dealer account to a secure payment system (SPS) account using a fourth telecommunication channel, less a dealer's fee for the transaction;* Upon information and belief, a financial institution associated and contracted with the retail store or authorized retailer Tracfone automatically transfers the amount of the transaction from the dealer account to a secure payment system (SPS) account under the direction or control of Tracfone using a fourth telecommunication channel, less a dealer's fee

*1(g): after funds have been transferred from the dealer account to the SPS account, notifying the PMC of the transfer using a fifth telecommunication channel in response to the funds transfer into the SPS account;* Upon information and belief, after funds have been transferred from a financial institution associated and contracted with the retail store or authorized retailer to an account under the direction and control of Tracfone, Tracfone is notified of the transfer. Upon information and belief, Tracfone maintains an account payable to each of the various cellular network operators it contracts with.

*1(h): in response to the funds transfer into the SPS account, generating codes using the PMC to enable the PCU to provide the service on the telecommunication system;* For instance, Tracfone is an MVNO. Upon information and belief, after Tracfone is notified of funds received related to a purchase of an airtime card; Tracfone generates codes that enable that a cellular phone to use the telecommunication system.

*1(i): transferring the codes to the customer using the first telecommunication channel for entry into the PCU by the customer.* For instance, the retail store or authorized retailer under the direction or control of Tracfone via contractual agreements, transfers the codes to the customer.

*1(j): processing the codes using the PCU;* For instance, a Tracfone compatible phone

process the codes.

*1(k): providing the service on the telecommunication system using the result of processing the codes by the PCU.*  For instance, once the codes are processed, Tracfone and the contracted carrier provides service on the cellular network.

53.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 2 of the '432 Patent in connection with the Accused Products.  This description is based on publicly available information.  Precis reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery. *2. The method of claim 1, further comprising issuing the codes to the dealer using the PMC and a sixth telecommunication channel*: For instance, Tracfone is an MVNO.  Upon information and believe, Tracfone issues the codes to the retail store or authorized retailer using a telecommunication between Tracfone and the retail store or authorized retailer.

54.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 3 of the '432 Patent in connection with the Accused Products.  This description is based on publicly available information.  Precis reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery. *3. The system of claim 1, wherein the first telecommunication channel, the second telecommunication channel, the third telecommunication channel, the fourth telecommunication channel, the fifth telecommunication channel, and the sixth telecommunication channel are one of a telephone network and the Internet:* For instance, each of the communication channels are through the Internet.

55.     Additionally, Defendant Tracfone has been and/or currently is an active inducer of infringement of the '432 Patent under 35 U.S.C. § 271(b) and contributory infringer of the '432 Patent under 35 U.S.C. § 271(c).

56.     Tracfone knew of the '432 Patent, or at least should have known of the '432 Patent since at least as early as August 23, 2018, but was willfully blind to its existence. Tracfone has had actual knowledge of the '432 Patent since at least as early as August 23, 2018 when claim charts for the '432 Patent were provided to Tracfone.

57.     Tracfone has provided the Accused Products to its customers and, on information and belief, instructions to use the Accused Products in an infringing manner while being on notice of (or willfully blind to) the Patent and Tracfone's infringement.  Therefore, on information and belief, Tracfone knew or should have known of the Patent and of its own infringing acts, or deliberately took steps to avoid learning of those facts.

58.     Tracfone knowingly and intentionally directs or controls are parties to directly infringe the '432 Patent.

59.     At least at least as early as August 23, 2018, Tracfone's infringement of the '432 Patent was and continues to be willful and deliberate, entitling Precis to enhanced damages.

60.     Additional allegations regarding Tracfone's knowledge of the ''432 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

61.     Tracfone's infringement of the '432 Patent is exceptional and entitles Precis to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

62.     Precis is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '564 Patent.

17

63.     Precis is entitled to recover from Tracfone all damages that Precis has sustained as a result of Tracfone's infringement of the '432 Patent, including, without limitation, a reasonable royalty.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 10,218,859

64.     Precis incorporates by reference and re-alleges paragraphs 14-39 of this Complaint as if fully set forth herein.

65.     Defendant Tracfone has infringed and is infringing, either literally or under the doctrine of equivalents, the '859 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, or selling in the United States through T contracts with its own retail stores (e.g. Total Wireless branded stores) and/or partner stores, which operate the sales under the direction and control of Tracfone, prepaid cellular Airtime phone cards ("Accused Products").

As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 1 of the '859 Patent in connection with the Accused Products.  This description is based on publicly available information.  Precis reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery. *I(a): A method of prepayment for service on a telecommunications system using a portable communication unit (PCU), the method comprising:* Tracfone is a Mobile Virtual Network Operator ("MVNO") which does not operate an cellular networks but directs or controls its own retail stores, authorized retailer, partner stores, cellular service providers which own cellular networks, and financial institution via contractual agreements to make, use, sell, and/or offer to sell a device or system that practices the method of prepayment for service on a telecommunications system using a portable communication unit in

accordance with Claim 1.  For instance, Tracfone is an MVNO that operates by allowing users to add airtime as you need it at 70,000 retail locations nationwide.  *See* ww2.tracfone.com/pay_as_you_go.jsp.

*1(b):  receiving a prepayment from a customer at a dealer for service on a telecommunications system using a first telecommunication channel*: To use Tracfone's system, Retail stores or an authorized retailer under the direction or control of Tracfone receive a prepayment from a customer for a Tracfone airtime card using a first telecommunication channel;

*1(c): receiving transaction order information at a prepaid management center (PMC) from a dealer about the prepayment by the customer to the dealer, the PMC receiving the transaction order information using a second telecommunication channel:* For instance, Tracfone is an MVNO.  Upon information and belief, Tracfone receives transaction information from the retail store or an authorized retailer related to a prepayment to the retail store or an authorized retailer using a second telecommunication channel.  *See e.g.*, http://twexclusive.com/pdf/Retail%20Dealer%20Presentation.pdf

*1(d):  providing a bank the transaction order information using a third telecommunication channel and the PMC;* For instance, Tracfone is an MVNO.  Upon information and belief, Tracfone directs or controls its retail store or an authorized retailer via contractual agreements to provide the transaction order information related to a purchase of an airtime card.

*1(e): notifying the dealer using the third telecommunication channel if insufficient funds are determined to be in a dealer account at the bank and providing the dealer an opportunity to replenish the dealer account;* Upon information and belief, a financial institution associated and contracted with the retail store or authorized retailer notifies the retail store or

authorized retailer if insufficient funds are determined and provides an opportunity to replenish the account.

*1(f): if sufficient funds are determined to be in the dealer account, automatically transferring the amount of the transaction from the dealer account to a secure payment system (SPS) account using a fourth telecommunication channel, less a dealer's fee for the transaction;* Upon information and belief, a financial institution associated and contracted with the retail store or authorized retailer Tracfone automatically transfers the amount of the transaction from the dealer account to a secure payment system (SPS) account under the direction or control of Tracfone using a fourth telecommunication channel, less a dealer's fee.

*1(g): notifying the PMC using a fifth telecommunication channel in response to the funds transfer into the SPS account;* Upon information and belief, in response to the funds transfer, Tracfone's account notifies Tracfone is notified of the transfer.  Upon information and belief, Tracfone maintains an account payable to each of the various cellular network operators it contracts with.

*1(h): generating codes using the PMC to enable the PCU to provide the service on the telecommunication system;* For instance, Tracfone is an MVNO.  Tracfone generates codes that enable that a cellular phone to use the telecommunication system.

*1(i): transferring the codes to the customer using the first telecommunication channel for entry into the PCU by the customer;* For instance, the retail store or authorized retailer under the direction or control of Tracfone via contractual agreements, transfers codes to the customer.

*1(j): processing the codes using the PCU;* For instance, a Tracfone compatible phone process the codes.

*1(k): providing the service on the telecommunication system using the result of*

*processing the codes by the PCU;* For instance, once the codes are processed, Tracfone and the contracted carrier provides service on the cellular network.

66.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 2 of the '859 Patent in connection with the Accused Products.  This description is based on publicly available information.  Precis reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery. *2. The method of claim 1, further comprising issuing the codes to the dealer using the PMC and a sixth telecommunication channel.*  For example, a sixth telecommunication channel is used by Tracfone to issue codes to its contracted retail store or authorized retailer.

67.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 3 of the '859 Patent in connection with the Accused Products.  This description is based on publicly available information.  Precis reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery. *3. The [method] of claim 1, wherein the first telecommunication channel, the second telecommunication channel, the third telecommunication channel, the fourth telecommunication channel, the fifth telecommunication channel, and the sixth telecommunication channel are one of a telephone network and the Internet:* For example, each of the communication channels are through the Internet.

68.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 4 of the '859 Patent in connection with the Accused Products.  This description is based on publicly available information.  Precis reserves

the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery. *4(a):  A method of prepayment for service on a telecommunications system using a portable communication unit (PCU), the method comprising*: Tracfone is a Mobile Virtual Network Operator ("MVNO") which does not operate an cellular networks but directs or controls its own retail stores, partner stores, cellular service providers which own cellular networks, and financial institution to make, use, sell, and/or offer to sell a device or system that practices the method of prepayment for service on a telecommunications system using a portable communication unit in accordance with Claim 1.  For instance, Tracfone is an MVNO that operates by allowing users to add airtime as you need it at 70,000 retail locations nationwide.  *See* ww2.tracfone.com/pay_as_you_go.jsp.

*4(b): using a first telecommunication channel, receiving a prepayment from a customer at a dealer into a dealer account, the prepayment for service on a telecommunications system;*; Using a first telecommunication channel, a retail stores or an authorized retailer under the direction or control of Tracfone via a contractual agreement receive a prepayment from a customer for a Tracfone airtime card into an account owned or associated with the retail store or authorized dealer; To use Tracfone's system, Tracfone users prepay a dealer for a Tracfone airtime card;

*4(c): receiving transaction order information at a prepaid management center (PMC) from a dealer about the prepayment by the customer to the dealer, the PMC receiving the transaction order information using a second telecommunication channel;* For instance, Tracfone is an MVNO.  Upon information and belief, Tracfone directs or controls its retail store or an authorized retailer via contractual agreements such that Tracfone receives transaction information from the retail store or an authorized retailer related to a prepayment to the retail store or an authorized retailer using a second telecommunication channel.  *See e.g.*,

22

http://twexclusive.com/pdf/Retail%20Dealer%20Presentation.pdf

*4(d): transferring the amount of the prepayment from the dealer account to a secure payment system (SPS) account using a third telecommunication channel, less a dealer's fee for the transaction;* Upon information and belief, a financial institution associated and contracted with the retail store or authorized retailer transfers the amount of the transaction from the dealer account to a secure payment system (SPS) account under the direction or control of Tracfone using a third telecommunication channel, less a dealer's fee

*4(e): notifying the PMC using a fourth telecommunication channel in response to the funds transfer into the SPS account;* Upon information and belief, after funds have been transferred from a financial institution associated and contracted with the retail store or authorized retailer to an account under the direction and control of Tracfone, Tracfone is notified of the transfer.  Upon information and belief, Tracfone maintains an account payable to each of the various cellular network operators it contracts with.

*4(f): generating codes using the PMC to enable the PCU to provide the service on the telecommunication system;* For instance, Tracfone is an MVNO.  Tracfone generates codes that enable that a cellular phone to use the telecommunication system.

*4(g) transferring the codes to the customer using the first telecommunication channel for entry into the PCU by the customer;* For instance, the retail store or authorized retailer under the direction or control of Tracfone via contractual agreements, transfers the codes to the customer.

*4(h): processing the codes using the PCU; and;* For instance, a Tracfone compatible phone process the codes.

*4(i): providing the service on the telecommunication system using the result of processing the codes by the PCU;*  For instance, once the codes are processed, Tracfone and the

contracted carrier provides service on the cellular network.

69.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 5 of the '859 Patent in connection with the Accused Products.  This description is based on publicly available information.  Precis reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery. ***5. The method of claim 4, further comprising issuing the codes to the dealer using the PMC and a fifth telecommunication channel.***  For example, a fifth telecommunication channel is used by Tracfone to issue codes to its contracted retail store or authorized retailer.

70.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 6 of the '859 Patent in connection with the Accused Products.  This description is based on publicly available information.  Precis reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery. ***6. The [method] of claim 5, wherein the first telecommunication channel, the second telecommunication channel, the third telecommunication channel, the fourth telecommunication channel, and the fifth telecommunication channel are one of a telephone network and the Internet:*** For example, each of the communication channels are through the Internet.

71.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 7 of the '859 Patent in connection with the Accused Products.  This description is based on publicly available information.  Precis reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery. ***7(a):  A method of prepayment for service on***

***a telecommunications system using a portable communication unit (PCU), the method comprising***: Tracfone is a Mobile Virtual Network Operator ("MVNO") which does not operate an cellular networks but directs or controls its own retail stores, partner stores, cellular service providers which own cellular networks, and financial institution to make, use, sell, and/or offer to sell a device or system that practices the method of prepayment for service on a telecommunications system using a portable communication unit in accordance with Claim 1.  For instance, Tracfone is an MVNO that operates by allowing users to add airtime as you need it at 70,000 retail locations nationwide.  *See* ww2.tracfone.com/pay_as_you_go.jsp.

**7(b): using a first telecommunication channel, receiving a prepayment from a customer at a dealer into a dealer account, the prepayment for service on a telecommunications system;**; Using a first telecommunication channel, a retail stores or an authorized retailer under the direction or control of Tracfone via a contractual agreement receive a prepayment from a customer for a Tracfone airtime card into an account owned or associated with the retail store or authorized dealer; To use Tracfone's system, Tracfone users prepay a dealer for a Tracfone airtime card;

**7(c): receiving transaction order information at a prepaid management center (PMC) from a dealer about the prepayment by the customer to the dealer, the PMC receiving the transaction order information using a second telecommunication channel;** For instance, Tracfone is an MVNO.  Upon information and belief, Tracfone directs or controls its retail store or an authorized retailer via contractual agreements such that Tracfone receives transaction information from the retail store or an authorized retailer related to a prepayment to the retail store or an authorized retailer using a second telecommunication channel.  *See e.g.*, http://twexclusive.com/pdf/Retail%20Dealer%20Presentation.pdf

**7(d): transferring the amount of the credit card prepayment to a secure payment system**

*(SPS) account using a third telecommunication channel;* Upon information and belief, a financial institution associated and contracted with the retail store or authorized retailer Tracfone transfers the amount of the transaction from the dealer account to a secure payment system (SPS) account under the direction or control of Tracfone using a third telecommunication channel.

*7(e): notifying the PMC using a fourth telecommunication channel in response to the funds transfer into the SPS account;* Upon information and belief, in response to the funds transfer, an account under the direction and control of Tracfone notifies Tracfone..  Upon information and belief, Tracfone maintains an account payable to each of the various cellular network operators it contracts with

*7(f): generating codes using the PMC to enable the PCU to provide the service on the telecommunication system;* For instance, Tracfone is an MVNO.  Upon information and belief, after Tracfone is notified of funds received related to a purchase of an airtime card; Tracfone generates codes that enable that a cellular phone to use the telecommunication system.

*7(g) transferring the codes to the customer using the first telecommunication channel for entry into the PCU by the customer;* For instance, the retail store or authorized retailer under the direction or control of Tracfone via contractual agreements, transfers the codes to the customer.

*1(h): processing the codes using the PCU; and;* For instance, a Tracfone compatible phone process the codes.

*7(i): providing the service on the telecommunication system using the result of processing the codes by the PCU;* For instance, once the codes are processed, Tracfone and the contracted carrier provides service on the cellular network.

72.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 8 of the '859 Patent in connection with the

Accused Products.  This description is based on publicly available information.  Precis reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery. *8. The method of claim 7, issuing the codes to the dealer using the PMC and a fifth telecommunication channel.*  For example, a fifth telecommunication channel is used by Tracfone to issue codes to its contracted retail store or authorized retailer.

73.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 9 of the '859 Patent in connection with the Accused Products.  This description is based on publicly available information.  Precis reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery. *9. The [method] of claim 8, wherein the first telecommunication channel, the second telecommunication channel, the third telecommunication channel, the fourth telecommunication channel, and the fifth telecommunication channel are one of a telephone network and the Internet:* For example, each of the communication channels are through the Internet.

74.     Additionally, Defendant Tracfone has been and/or currently is an active inducer of infringement of the ''859 Patent under 35 U.S.C. § 271(b) and contributory infringer of the '859 Patent under 35 U.S.C. § 271(c).

75.     Tracfone knew of the '859 Patent, or at least should have known of the '859 Patent, but was willfully blind to its existence. On information and belief, Tracfone has had actual knowledge of the '859 Patent since at least as early as the filing and/or service of this Complaint.

76.     Tracfone has provided the Accused Products to its customers and, on information and belief, instructions to use the Accused Products in an infringing manner while being on notice

of (or willfully blind to) the '859 Patent and Tracfone's infringement.  Therefore, on information and belief, Tracfone knew or should have known of the '859 Patent and of its own infringing acts, or deliberately took steps to avoid learning of those facts.

77.     Tracfone knowingly and intentionally encourages and aids at least its end-user customers to directly infringe the '859 Patent.

78.     At least as early as the filing and/or service of this Complaint, Tracfone's infringement of the '859 Patent was and continues to be willful and deliberate, entitling Precis to enhanced damages.

79.     Additional allegations regarding Tracfone's knowledge of the '859 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

80.     Tracfone's infringement of the '859 Patent is exceptional and entitles Precis to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

81.     Precis is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '859 Patent.

82.     Precis is entitled to recover from Tracfone all damages that Precis has sustained as a result of Tracfone's infringement of the '859 Patent, including, without limitation, a reasonable royalty.

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 10,594,873**

83.     Precis incorporates by reference and re-alleges paragraphs 14-39 of this Complaint as if fully set forth herein.

84.     Defendant Tracfone has infringed and is infringing, either literally or under the doctrine of equivalents, the '873 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or

indirectly, by making, using, offering for sale, or selling in the United States through its own retail stores and/or partner stores, prepaid cellular phone cards thru its Tracfone and various brands ("Accused Products") .

85.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 1 of the '873 Patent in connection with the Accused Products.  This description is based on publicly available information.  Precis reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery.  *1(a): A method of prepayment for service on a telecommunications system using a portable communication unit (PCU), the method comprising*: Tracfone is a Mobile Virtual Network Operator ("MVNO") which does not operate an cellular networks but directs or controls its own retail stores, partner stores, cellular service providers which own cellular networks, and financial institution to make, use, sell, and/or offer to sell a device or system that practices the method of prepayment for service on a telecommunications system using a portable communication unit in accordance with Claim 1.  For instance, Tracfone is an MVNO that operates by allowing users to add airtime as you need it at 70,000 retail locations nationwide.  *See* ww2.tracfone.com/pay_as_you_go.jsp.

*1(b): receiving a prepayment from a customer at a dealer or at a provider's web site, the prepayment for service on a telecommunications system, the prepayment made using a credit instrument or a debit*; To use Tracfone's system, Retail stores or an authorized retailer (including their respective websites) under the direction or control of Tracfone receive a prepayment from a customer for a Tracfone airtime card using a first telecommunication channel;

*1(c): receiving information relating to the prepayment at a prepaid management center (PMC) from the dealer or the provider's web site, the PMC receiving the information using a*

*first telecommunication channel;* For instance, Tracfone is an MVNO.  Upon information and belief, Tracfone and its associated account receives information related to the prepayment from its retail store or an authorized retailer using a first telecommunication channel.  *See e.g.*, http://twexclusive.com/pdf/Retail%20Dealer%20Presentation.pdf

*1(d): verifying whether the customer has sufficient credit line on the credit instrument or debit instrument for the prepayment and, if the credit line is sufficient, charging the customer's credit line;* Upon information and belief, a financial institution associated and contracted with the retail store or authorized retailer or Tracfone verifies whether the customer has sufficient credit line, and charging the credit line if sufficient.

*1(e): after charging the customer's credit line, generating one or more codes using the PMC to enable the PCU to access the service on the telecommunication system;* For instance, Tracfone is an MVNO.  Upon information and belief, after the customer's credit line is charged, Tracfone generates codes that enable that a cellular phone to use the telecommunication system.

*1(f): transferring the one or more codes to the customer using a second telecommunication channel for entry into the PCU by the customer;* For instance, Tracfone transfers the codes to the customer via a second telecommunication channel.

*1(g): processing the one or more codes using the PCU;* For instance, a Tracfone compatible phone process the codes.

*1(h): providing access to the service on the telecommunication system to the customer using the result of processing the one or more codes by the;* For instance, once the codes are processed, Tracfone and the contracted carrier provides service on the cellular network.

86.     As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 11 of the '873 Patent in connection with

the Accused Products.  This description is based on publicly available information.  Precis reserves

the right to modify this description, including, for example, on the basis of information about the

Accused Products that it obtains during discovery.  ***11(a): A system for providing access to service***

***on a telecommunication system comprising***: Tracfone is a Mobile Virtual Network Operator

("MVNO") which does not operate an cellular networks but directs or controls its own retail stores,

partner stores, cellular service providers which own cellular networks, and financial institution to

make, use, sell, and/or offer to sell a device or system that practices the method of prepayment for

service on a telecommunications system using a portable communication unit in accordance with

Claim 1.  For instance, Tracfone is an MVNO that operates by allowing users to add airtime as

you need it at 70,000 retail locations nationwide.  *See* ww2.tracfone.com/pay_as_you_go.jsp

***11(b): a prepaid management center (PMC) configured to receive information relating to a***

***prepayment for service on a telecommunications system from a dealer or a provider's website,***

***the dealer or the provider's website coupled with the PMC through a first telecommunication***

***channel, the prepayment made by a customer using a using a credit instrument or a debit***

***instrument, the PMC further configured to verify whether the customer has sufficient credit line***

***on the credit instrument or debit instrument for the prepayment and, if the credit line is***

***sufficient, the PMC further configured to charge the customer's credit line and generate and***

***transfer one or more codes to the customer using a second telecommunication channel coupled***

***to the PMC; and***; Tracfone is configured to receive information related to a prepayment for service

made by a credit or debit card on a telecommunication channel from a retail store or an authorized

retailer under the direction or control of Tracfone.  Tracfone is further configured to verify whether

a customer has sufficient credit line, and charing the credit line if the credit line is sufficient.

Tracfone   also generates and transfers one or mode codes to the customer using a second

telecommunications channel.

*11(c): a portable communication unit (PCU) coupled with the PMC through the second telecommunication channel, the PCU configured to process the one or more codes and provide access to the service on the telecommunication system to the customer using the result of processing the one or more codes by the PCU;* For instance, **a** Tracfone is an MVNO.  A compatible Tracfone device communicates with Tracfone via a second telecommunication channel and is configured to process codes to provide access to the service on the telecommunication system.

87.    As just one non-limiting example, set forth below (with claim language in bold and italics) is exemplary evidence of infringement of Claim 12 of the '873 Patent in connection with the Accused Products.  This description is based on publicly available information.  Precis reserves the right to modify this description, including, for example, on the basis of information about the Accused Products that it obtains during discovery. *12(a): The system of claim 11, wherein the PMC is further configured to one of*:  As stated above, the Accused Products meet claim 11. *12(b) provide the one or more codes to the dealer through the second telecommunication channel; or;* The Tracfone system can provide codes to the contracted retailer or authorized reseller through an internet connection; *12(c) provide the one or more codes to the provider's web site through the second telecommunication channel; and;* The Tracfone system can provide one or more codes to the contracted retailer or authorized reseller's website; *12(d): wherein the provider's web site is configured to communicate the one or more codes to the customer;* the contracted retailer or authorized reseller's website can provide the one or more codes to the customer.

88.    Additionally, Defendant Tracfone has been and/or currently is an active inducer of

infringement of the '873 Patent under 35 U.S.C. § 271(b) and contributory infringer of the '873 Patent under 35 U.S.C. § 271(c).

89.    Tracfone knew of the '873 Patent, or at least should have known of the '873 Patent, but was willfully blind to its existence. On information and belief, Tracfone has had actual knowledge of the '873 Patent since at least as early as the filing and/or service of this Complaint.

90.    Tracfone has provided the Accused Products to its customers and, on information and belief, instructions to use the Accused Products in an infringing manner while being on notice of (or willfully blind to) the '873 Patent and Tracfone's infringement.  Therefore, on information and belief, Tracfone knew or should have known of the '873 Patent and of its own infringing acts, or deliberately took steps to avoid learning of those facts.

91.    Tracfone knowingly and intentionally encourages and aids at least its end-user customers to directly infringe the '873 Patent.

92.    At least as early as the filing and/or service of this Complaint, Tracfone's infringement of the '873 Patent was and continues to be willful and deliberate, entitling Precis to enhanced damages.

93.    Additional allegations regarding Tracfone's knowledge of the '873 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

94.    Tracfone's infringement of the '873 Patent is exceptional and entitles Precis to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

95.    Precis is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '873 Patent.

96.    Precis is entitled to recover from Tracfone all damages that Precis has sustained as

a result of Tracfone's infringement of the '873 Patent, including, without limitation, a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, Precis respectfully requests:

A.      That Judgment be entered that Tracfone has infringed at least one or more claims of the Patents-in-Suit, directly and/or indirectly, literally and/or under the doctrine of equivalents;

B.      An award of damages sufficient to compensate Precis for Tracfone's infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Tracfone's willful infringement;

C.      That the case be found exceptional under 35 U.S.C. § 285 and that Precis be awarded its reasonable attorneys' fees;

D.      Costs and expenses in this action;

E.      An award of prejudgment and post-judgment interest; and

F.      Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Precis respectfully demands a trial by jury on all issues triable by jury.

Dated:  April 21, 2020                    Respectfully submitted,

                                          By: */s/ Neal Massand*
                                          Neal Massand
                                          Texas Bar No. 24039038
                                          nmassand@nilawfirm.com
                                          Stevenson Moore V
                                          Texas Bar No. 24076573
                                          smoore@nilawfirm.com

                                          NI, WANG & MASSAND, PLLC
                                          8140 Walnut Hill Ln., Ste. 500
                                          Dallas, TX 75231
                                          Tel: (972) 331-4600
                                          Fax: (972) 314-0900

                                          ***Attorneys for Plaintiff***
                                          ***Precis Group LLC***